## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

|  |  |  |
|---|---|---|
| BROOKE GEDRICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: |
| v. | ) | |
| | ) | |
| DOCTORS HOSPITAL OF | ) | **JURY TRIAL DEMANDED** |
| AUGUSTA, LLC; GEORGIA EM-I | ) | |
| MEDICAL SERVICES, P.C. d/b/a | ) | |
| ENVISION PHYSICIAN SERVICES, LLC; | ) | |
| and ACS PRIMARY CARE | ) | |
| PHYSICIANS–SOUTHEAST, P.C. d/b/a | ) | |
| TEAMHEALTH, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Plaintiff Brooke Gedrick (hereinafter "Plaintiff" or "Dr. Gedrick") submits the following Complaint for Damages and Equitable Relief against Defendant Doctors Hospital of Augusta, LLC ("the Hospital"), Defendant Georgia EM-I Medical Services, P.C. d/b/a Envision Physician Services, LLC ("Envision"), and Defendant ACS Primary Care Physicians–Southeast, P.C. d/b/a TeamHealth ("TeamHealth") (collectively, "Defendants"), showing the Court as follows:

## INTRODUCTION

1.

In February 2016, Dr. Gedrick began working at Doctors Hospital of Augusta as the first and only full-time female emergency medicine physician at the Hospital. While Dr. Gedrick worked at the Hospital, other doctors, including Dr. Gedrick's supervisor and the head nurse, made

gender-biased comments that Dr. Gedrick was too aggressive and intimidating. Dr. Gedrick was not offered the respect, nor the compensation, equal to that of her male counterparts. Additionally, Dr. Gedrick's direct supervisor subjected her to sexual harassment. When she denied his advances, she lost her full-time contract. Finally, after she complained that the loss of her contract resulted from sex-based discrimination, she was terminated.

2.

From October 2017 through the time of her termination in July 2019, including all times relevant to this action, Dr. Gedrick and her direct supervisor, Dr. Thomas Zickgraf were each jointly employed by the Hospital, Envision and/or TeamHealth.

3.

Dr. Gedrick asserts claims for unlawful sex discrimination, retaliation, and a sexually hostile work environment in violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e *et seq*. against all Defendants. Additionally, Dr. Gedrick asserts a claim under the Equal Pay Act of 1963, 29 U.S.C. §206 (d) against Defendant Envision. Plaintiff seeks back pay and the lost economic benefits of her employment, compensatory damages, reasonable attorneys' fees and costs of litigation, and all other relief this Court may deem just.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

4.

Dr. Gedrick timely filed a charge of discrimination with the Equal Employment Opportunity Commission and received her notice of right to sue within the last ninety days. She has complied with all other conditions precedent to the institution of this lawsuit.

**JURISDICTION AND VENUE**

5.

Dr. Gedrick's constitutional claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a).

6.

Venue is proper under 28 U.S.C. § 1391(b) and (c), as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in the Augusta Division of the United States District Court for the Southern District of Georgia.

**PARTIES**

7.

Dr. Gedrick is a female who resides in Columbia County, Georgia, which is in the Augusta Division of the Southern District of Georgia.

8.

Dr. Gedrick was an "employee" of Defendants Doctors Hospital of Augusta, Envision, and TeamHealth within the meaning of Title VII, 42 U.S.C. §2000e(f).

9.

Defendant Doctors Hospital of Augusta is subject to this Court's jurisdiction. The Hospital may be served by delivering a copy of the Complaint and summons to C T Corporation System at 289 S. Culver St, Lawrenceville, Georgia 30046-4805.

10.

Defendant Envision is subject to this Court's jurisdiction. Envision may be served by delivering a copy of the Complaint and summons to CSC of Cobb County, Inc. at 192 Anderson Street SE, Ste. 125, Marietta, Georgia 30060.

11.

Defendant TeamHealth is subject to this Court's jurisdiction. TeamHealth may be served by delivering a copy of the Complaint and summons to Corporation Service Company at 40 Technology Parkway South, Ste. 300, Norcross, Georgia 30092.

12.

The Hospital, Envision, and TeamHealth were Dr. Gedrick's "employer" as defined by Title VII, 42 U.S.C. § 2000e(b).

**FACTUAL BACKGROUND**

13.

Dr. Gedrick graduated from medical school in 2010 and completed her Emergency Medicine Residency in 2014.

14.

In or around October 2017, the Hospital contracted with Envision to provide all emergency physicians for the Hospital.

15.

Accordingly, in or about November 2017, Envision hired Dr. Gedrick as an emergency room doctor to work at the Hospital.

4

16.

Notably, Dr. Gedrick was the only full-time female emergency medicine physician Envision employed at the Hospital.

17.

Dr. Gedrick was promoted to Assistant Medical Director of Envision's emergency services at the Hospital in January of 2018.

18.

During her employment, Dr. Gedrick received accolades for her work, including from the Chief Medical Officer of the Hospital, Dr. John Farr, who praised Dr. Gedrick for the "first-class" care she provided a patient, and her nomination for Envision's Emerging Leaders Program.

19.

By July 2019, when TeamHealth took over the emergency physicians contract with the Hospital, Dr. Gedrick had established herself as a qualified and respected doctor at the Hospital.

20.

During her employment with Defendants, Dr. Gedrick experienced habitual instances of gender discrimination and sexual harassment that poisoned her work environment, as detailed below.

### *Dr. Gedrick's Employment with the Hospital*

21.

The Hospital was a joint employer of Dr. Gedrick.

22.

The Hospital supervised and controlled Dr. Gedrick's activities, such as which patients she

could treat, and the manner in which she could treat them, in accordance with the Hospital's rules, policies and procedures.

23.

Dr. Gedrick was part of a core group of emergency medicine physicians at the Hospital who cared for patients and served on various Hospital committees pertaining to emergency medicine and patient care.

24.

Dr. Gedrick was required to comply with all Hospital rules, policies, and procedures.

25.

The Hospital invested in, owned, and provided the majority of the equipment that Dr. Gedrick used in her day-to-day work, from hospital beds to scalpels and MRIs, and invested in, owned, and maintained the hospital premises, including emergency room where Dr. Gedrick practiced medicine.

26.

As an emergency physician, Dr. Gedrick performed one of the jobs most integral to the Hospital's operations.

27.

The Hospital had the right to fire or modify Dr. Gedrick's employment conditions.

### *Dr. Gedrick's Employment with Envision*

28.

Envision was a joint employer of Dr. Gedrick.

29.

Envision directed and controlled Dr. Gedrick's work as Associate Medical Director and as an emergency physician.

30.

In her position as Associate Medical Director, Envision imposed control over the manner and means of Dr. Gedrick's performance, from obligations involving departmental operations, patient care activities, administrative functions, and even recruiting activity.

31.

As an employee, Dr. Gedrick was expected to comply with Envision's "Clinical Employee Handbook," detailing additional requirements for employees.

32.

Envision also set Dr. Gedrick's work schedule, determining the start time and duration of all shifts, and required her to comply with certain licensing and qualifications requirements.

33.

Dr. Gedrick's work was directly supervised by Dr. Thomas Zickgraf, who Envision employed during the relevant period. Upon information and belief, TeamHealth continues to employ Dr. Zickgraf.

34.

Dr. Gedrick's contract length with Envision was yearly, with automatic renewal, and not by the job.

35.

Dr. Gedrick was paid monthly by Envision, not by the job.

36.

Envision provided Dr. Gedrick with 401k benefits and the option of healthcare benefits and provided Dr. Gedrick medical malpractice insurance.

37.

Dr. Gedrick's work as an emergency physician was integral to Envision's business because employing healthcare professionals to work at hospitals is Envision's primary business.

### *Dr. Gedrick's Employment with TeamHealth*

38.

TeamHealth was a joint employer of Dr. Gedrick.

39.

TeamHealth directed and controlled Dr. Gedrick's work as an emergency physician.

40.

TeamHealth set Dr. Gedrick's work schedule, determining the start time and duration of all shifts.

41.

Dr. Gedrick was required to comply with all rules and regulations included in all agreements between TeamHealth and the Hospital.

42.

Dr. Gedrick was also required to participate in any third-party payor contracts that TeamHealth contracted or affiliated with.

43.

Dr. Gedrick's contract also mandated that she provide supervision of physicians' assistants

and advanced registered nurse practitioners, if required by TeamHealth, and that she maintain specific licensing and qualifications requirements and comply with company-wide Compliance and Ethics programs.

44.

Dr. Gedrick's direct supervisor, Dr. Thomas Zickgraf, contracted with TeamHealth.

45.

Dr. Gedrick was paid by TeamHealth monthly and not by the job; her contract with TeamHealth was without an end date.

46.

TeamHealth provided Dr. Gedrick with medical malpractice insurance.

47.

Dr. Gedrick's work as an emergency physician was integral to TeamHealth's business because employing healthcare professionals to work at hospitals is TeamHealth's primary business.

### *Dr. Gedrick is Paid Less Than Her Male Counterpart*

48.

In November 2017, Dr. Gedrick requested from Envision a nighttime differential bonus, typical for overnight doctors.

49.

In response, Dr. Gedrick's direct supervisor, Dr. Tom Zickgraf—at the time, an Envision employee, told her that "Envision doesn't pay nocturnist differentials."

50.

After her self-advocacy, however, Envision agreed to a $10 per hour nocturnist supplement, so that she was paid about $260 per hour.

51.

The nocturnist supplement that Envision paid Dr. Gedrick was lower than the typical amount for an overnight doctor's supplement.

52.

Later, in August 2018, Dr. Gedrick learned that a male doctor in her same position (Dr. David Brosnahan) received a $35 per hour nighttime differential (compared to her $10 per hour) for a total of about $285 per hour.

53.

Dr. Brosnahan had been hired in February 2018 and made $25 more per hour than Dr. Gedrick for nearly eight months.

54.

Upon learning of this disparity in August 2018, Dr. Gedrick immediately complained to Dr. Zickgraf, her supervisor, and asked for an explanation.

55.

Dr. Zickgraf explained that the reason for the difference in pay was because "women aren't good at negotiating."

56.

After Dr. Gedrick's persistence, Envision eventually raised her pay to be equal to that of Dr. Brosnahan. However, Envision refused to pay Dr. Gedrick in arrears for the seven to eight months period that she was denied compensation commensurate with her similarly situated male colleague.

### Dr. Gedrick Is Subjected to Discrimination and Sexual Harassment by Her Supervisor

57.

Dr. Thomas Zickgraf was jointly employed by the Hospital and Envision/TeamHealth.

58.

When Envision took over the emergency physicians contract with the Hospital in October 2017, it hired Dr. Zickgraf as Emergency Room Medical Director.

59.

Dr. Gedrick was promoted to Assistant Medical Director of Envision's emergency services in January 2018 and worked directly under D. Zickgraf's supervision.

60.

Soon thereafter, Dr. Zickgraf began subjecting Dr. Gedrick to discriminatory sex-based comments and sexual harassment.

61.

In addition to his sexist sentiment made to Dr. Gedrick that "women weren't good at negotiating," Dr. Zickgraf made numerous other statements to Dr. Gedrick which reflected a discriminatory animus toward female doctors and treated male doctors more favorably.

62.

Dr. Zickgraf stated to Dr. Gedrick that a female doctor he had interviewed would not be hired for the position because she had a reputation for being "difficult."

63.

In contrast, Dr. Zickgraf regularly adopted a "let this one slide" attitude with respect to the errors and misbehavior of male doctors.

64.

For example, Dr. Zickgraf knew that a male doctor engaged in domestic disputes with his ex-wife and girlfriend during work hours, yet never disciplined the male doctor or addressed the fact that his behavior created workplace disturbances.

65.

In addition, on multiple occasions, Dr. Zickgraf made sexually discriminatory comments to or about Dr. Gedrick.

66.

In November 2018, Dr. Zickgraf instructed Dr. Gedrick to speak only when spoken to during Hospital committee meetings and "sit there and look pretty."

67.

However, Dr. Zickgraf did not undermine and disrespect his male subordinates as he did Dr. Gedrick.

68.

In the early morning hours of February 21, 2019, Dr. Zickgraf subjected Dr. Gedrick to sexual harassment by sending her a unwanted sexual video through Facebook Messenger.

69.

The video that Dr. Zickgraf sent to Dr. Gedrick shows a woman in a bathing suit approaching a man in a sexual manner and asking, "Are you the manager?" The man replies, "I could be," and the woman pulls the man closer by tugging on his shirt. The woman engages in a conversation of an implied sexual nature with the man, while tracing the man's lips with her finger. The woman then inserts her index finger in the man's mouth as if to imitate oral sex.

70.

After sending the video, Dr. Zickgraf used an emoji to "waive" at Dr. Gedrick on Facebook Messenger as an implied way of drawing her attention to the sexually explicit video of the woman and her male "manager."

71.

As Dr. Zickgraf was Dr. Gedrick's manager, the overly sexual video made Dr. Gedrick extremely uncomfortable since it was obvious that Dr. Zickgraf was seeking or implying his desire for a sexual relationship with her.

72.

After she received Dr. Zickgraf's sexually explicit message, Dr. Gedrick "blocked" Dr. him on Facebook.

***Dr. Zickgraf Begins to Retaliate Against Dr. Gedrick After***
***She Rejects his Sexual Advances***

73.

Soon thereafter, Dr. Zickgraf made comments to Dr. Gedrick which indicated his awareness that she had rebuffed him on Facebook, and he began to retaliate against Dr. Gedrick for refusing his sexual advances.

74.

A few weeks later, Dr. Gedrick learned that Dr. Zickgraf had begun organizing meetings with physicians' assistants and nurse practitioners that he deemed "Brooke Bash," where he provided a stage for individuals to discuss and criticize (or "bash") Dr. Gedrick.

75.

Dr. Zickgraf organized no similar meetings to discuss male doctors, or doctors who had not rejected his sexual advances.

76.

Dr. Zickgraf also began criticizing Dr. Gedrick more than ever before. For example, Dr. Zickgraf informed Dr. Gedrick that her tone was "wrong" and that she was "too intimidating."

77.

Dr. Zickgraf made no similar criticisms of male doctors or doctors who had not rejected his sexual advances.

***Dr. Zickgraf Retaliates Against Dr. Gedrick***
***by Denying her a Full-time Contract***

78.

In early 2019, the Emergency Room doctors learned that Envision would no longer provide the Hospital's emergency physician staff; instead, those services would be provided by TeamHealth beginning in July 2019.

79.

During the first week of April 2019, Dr. Gedrick complained to Rita Offenburg, the physician recruiter for TeamHealth, about Dr. Zickgraf's harassment and discriminatory behavior.

80.

The following week, Dr. Gedrick was informed by TeamHealth that she would not be offered a full-time contract to continue working at the Hospital through TeamHealth.

81.

Dr. Gedrick was informed by another doctor that TeamHealth's decision not to offer her a full-time contract was partly because the Head Nurse, Jodi Cunningham, did not want her there.

82.

In addition to not being offered a full-time contract by TeamHealth, the part-time contract that Dr. Gedrick was offered was for day shift assignments rather than the night shift assignments that Dr. Gedrick had worked for the for the entirety of her employment at the Hospital.

83.

When Dr. Gedrick approached Dr. Zickgraf to ask why she was being assigned to work day shifts rather than night shifts, Dr. Zickgraf told her, "Me and Jodi [Cunningham] thought you'd be less of a bitch if you worked during the day."

***Dr. Gedrick is Wrongfully Terminated***

84.

Dr. Gedrick was upset about being denied a full-time contract for discriminatory and retaliatory reasons.

85.

In a Facebook group page for medical workers, another female commented that she was being subjected to discrimination in the medical field based on her sex. In response, Dr. Gedrick agreed and shared that she felt that she was being treated similarly.

86.

An unknown individual took a screen shot of Dr. Gedrick's post reflecting her belief that she was being subjected to sex-based workplace discrimination and sent it to Dr. Zickgraf.

87.

Shortly thereafter, in May 2019, Dr. Zickgraf pulled Dr. Gedrick aside and told her that he knew about her Facebook post, and that she needed to "watch herself" regarding making comments about being denied a full-time contract because of her sex.

88.

Dr. Zickgraf told her, "HCA [Healthcare] (the company which operates the Hospital) is a huge corporation that runs hospitals all over the country, and you don't want to fuck with them."

89.

In response, Dr. Gedrick engaged in protected activity by informing the head trauma surgeon, various nurses, and other physicians, that she believed that the denial of her full-time contract was the result of sex discrimination and retaliation.

90.

In July 2019, Dr. Zickgraf and an Envision Human Resources representative called Dr. Gedrick to inform her that her contract with Envision was being terminated, effective immediately.

91.

Dr. Gedrick was further informed that her contract with TeamHealth was also being terminated effective immediately, and the eleven shifts she was already scheduled to work with TeamHealth would be reassigned.

92.

Dr. Gedrick was never given a warning, was never written up, and was never placed on any performance improvement plan, as male doctors had been in the past.

93.

TeamHealth subsequently informed Dr. Gedrick that she was being terminated at the "request of Hospital."

94.

However, similarly situated men (such as David Brosnahan) were not denied full-time contracts, even though numerous nurses complained about them.

95.

Another similarly situated male, Troy Coon, who had previously separated from employment with the Hospital, was hired by TeamHealth, despite past performance issues.

96.

Indeed, yet another similarly situated male physician, who had been on probation and had been required to take anger management classes, was offered a full-time contract with TeamHealth.

## COUNT I
### DISPARATE TREATMENT ON THE BASIS OF SEX
### IN VIOLATION OF TITLE VII
#### *Against Defendant Doctors Hospital, Defendant Envision, and Defendant TeamHealth*

97.

Paragraph numbers 1 through 96 are incorporated herein by reference.

98.

Dr. Gedrick is a member of a protected class in that she is female.

99.

Dr. Gedrick was an "employee" of the Hospital, Envision, and TeamHealth as that term is defined by Title VII, 42 U.S.C. § 2000e *et seq.*

100.

Defendant Hospital, Defendant Envision, and Defendant TeamHealth constitute a "joint employer" of Plaintiff, as defined by Title VII, 42 U.S.C. § 2000e(b).

101.

Dr. Gedrick was subjected to disparate treatment on the basis of her sex, female, by Dr. Thomas Zickgraf for which Defendant Hospital, Defendant Envision and Defendant TeamHealth are each liable as Dr. Zickgraf's joint employers.

102.

Defendant Hospital subjected Dr. Gedrick to disparate treatment when it, *inter alia,* subjected her to a sexually hostile environment and discriminatory sex-based comments, as well as holding her to different behavioral standards than her male counterparts, denying her a full-time contract and terminating her employment because of her sex.

103.

Defendant Envision subjected Dr. Gedrick to disparate treatment when it, *inter alia,* subjected her to disparate pay, a sexually hostile environment, discriminatory sex-based comments, and denied her full-time contract, as well as held her to different behavioral standards than her male counterparts, because of her sex.

104.

Defendant TeamHealth subjected Dr. Gedrick to disparate treatment when it, *inter alia,* subjected her to discriminatory sex-based comments, held her to different behavioral standards than her male counterparts, denied her a full-time contract, and terminated her employment because of her sex.

105.

Defendants subjected Dr. Gedrick to disparate treatment because of her sex as compared to her similarly situated male counterparts.

106.

The above-pled actions of Defendants constitute sex discrimination in violation of Title VII of the Civil Rights Act of 1964.

107.

Dr. Gedrick's sex was a motivating factor in Defendants' decisions to take the above-pled discriminatory actions, even if her sex was not the only factor that motivated that decision.

108.

The actions of Defendants in subjecting Plaintiff to disparate treatment were willful, deliberate, and intended to cause Dr. Gedrick harm, and/or were committed with reckless disregard for the harm caused to Plaintiff and were in derogation of her federally protected rights.

109.

As a direct and proximate result of the Defendants' violations of Title VII, Plaintiff has suffered damages, including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

110.

As a result of the above-pled violations of Title VII, Plaintiff is entitled to recover lost wages and economic benefits of her employment, compensatory damages for emotional distress, front pay, and all other legal and equitable relief provided for by Title VII and all statutes providing for relief for violations of Title VII.

## COUNT II
### RETALIATION IN VIOLATION OF TITLE VII
*Against Defendant Doctors Hospital, Defendant Envision,*
*and Defendant TeamHealth*

111.

Paragraph numbers 1 through 96 are incorporated herein by reference.

112.

Dr. Gedrick was an "employee" of the Hospital, Envision, and TeamHealth as that term is
defined by Title VII, 42 U.S.C. § 2000e *et seq.*

113.

Defendant Hospital, Defendant Envision, and Defendant ACS TeamHealth constitute a
"joint employer" of Plaintiff, as defined by Title VII, 42 U.S.C. § 2000e(b).

114.

Dr. Gedrick was subjected to retaliation by Dr. Thomas Zickgraf after she opposed
unlawful sex discrimination, for which Defendant Hospital, Defendant Envision and Defendant
TeamHealth are each liable as Dr. Zickgraf's joint employers.

115.

During her employment with Defendants, Plaintiff engaged in statutorily protected activity
by, among other things, complaining of gender discrimination and sexual harassment in violation
of Title VII.

116.

Defendant Hospital subjected Plaintiff to numerous adverse actions including, *inter alia*,
subjecting her to discriminatory comments, organizing meetings to disparage her, holding her to
different behavioral standards than her male counterparts, denying her a full-time contract, and

terminating her employment, all of which altered the terms and conditions of her employment and all of which would have dissuaded a reasonable worker from making or supporting a charge of discrimination.

117.

Defendant Envision subjected Plaintiff to numerous adverse actions including, *inter alia*, subjecting her to discriminatory comments, organizing meetings to disparage her, holding her to different behavioral standards than her male counterparts, and denying her a full-time contract, all of which altered the terms and conditions of her employment and all of which would have dissuaded a reasonable worker from making or supporting a charge of discrimination.

118.

Defendant TeamHealth subjected Plaintiff to numerous adverse actions including, *inter alia*, holding her to different behavioral standards than her male counterparts, denying her a full-time contract, and terminating her employment, all of which altered the terms and conditions of her employment and all of which would have dissuaded a reasonable worker from making or supporting a charge of discrimination.

119.

Defendants lack any legitimate justification for subjecting Plaintiff to the adverse actions complained of above, and/or any such purported legitimate justifications are mere pretext for retaliation.

120.

The actions of Defendants in subjecting Plaintiff to the adverse actions complained of above were willful, deliberate, and intended to cause Plaintiff harm, and/or were committed with

reckless disregard for the harm caused to Plaintiff and were in derogation of her federally protected rights.

121.

As a direct and proximate result of Defendants' violations of Title VII, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

122.

As a result of the above-pled violations of Title VII, Plaintiff is entitled to recover lost wages and economic benefits of her employment, compensatory damages for emotional distress, as well as front pay, and other equitable relief, and all other legal and equitable relief provided for by Title VII and all statutes providing for relief for violations of Title VII.

**COUNT III**
**Sexually Hostile Work Environment in Violation of Title VII**
***Against Defendant Doctors Hospital and Defendant Envision***

123.

Paragraph numbers 1 through 96 are incorporated herein by reference.

124.

Dr. Gedrick was subjected to a sexually hostile work environment by Dr. Zickgraf, for which Defendant Hospital and Defendant Envision are liable as Dr. Zickgraf's joint employers.

125.

As outlined above, Dr. Gedrick was subjected to severe and pervasive sexual advances Dr. Zickgraf.

126.

At all times relevant to this action, Defendant Hospital and Defendant Envision knew or should have known of Dr. Zickgraf's sexual harassment of Dr. Gedrick and the existence of a sexually hostile work environment but failed to take remedial action to prevent or correct the harassment or protect Dr. Gedrick.

127.

At all relevant times, Dr. Zickgraf was acting in the course and scope of his employment with the Hospital and Envision, making Defendant Hospital and Defendant Envision vicariously liable for the actions of Dr. Zickgraf under a theory of *respondeat superior*.

128.

Defendant Hospital and Defendant Envision willfully and wantonly disregarded Plaintiff's rights, and its discrimination against Dr. Gedrick was undertaken in bad faith.

129.

As a result of Defendant Hospital and Defendant Envision's unlawful actions, Dr. Gedrick has suffered emotional distress, inconvenience, humiliation, and other indignities.

130.

As a result of Defendant Hospital and Defendant Envision's violations of Title VII, Ms. Gedrick is entitled to recover any lost economic benefits of her employment, compensatory and punitive damages, and reasonable attorneys' fees and costs, as well as equitable and injunctive relief.

**COUNT IV**
**Disparate Pay in Violation of the Equal Pay Act**
*Against Defendant Envision*

131.

Paragraph numbers 1 through 96 are incorporated herein by reference.

132.

Plaintiff is female. David Brosnahan, a male doctor in her same position, received a higher nighttime differential than Plaintiff, even though they performed the same job.

133.

Defendant Envision cannot demonstrate that the difference in the wages and other compensation paid to Plaintiff and her comparator is justified on any permissible basis under the Equal Pay Act, 29 U.S.C. § 206(d)(1)(i)-(iv).

134.

Defendant Envision compensated Plaintiff less than a male employee who performed the same job because of her sex.

135.

Defendant Envision's refusal to compensate Plaintiff in an amount equal to that which it compensated her male comparator was willful.

136.

As a direct and proximate result of Defendant Envision's violations of the Equal Pay Act, Plaintiff has suffered economic damages, including lost wages and other economic benefits of employment.

137.

Plaintiff is entitled to all appropriate damages, remedies, and relief available under the EPA for wage discrimination, including damages in the amount of the difference between the wages, bonuses, benefits, or other compensation she earned, and which were earned by her male comparator, as well as an additional equal amount as liquidated damages, and reasonable attorneys' fees and costs of litigation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

A.      That this Court take jurisdiction of this matter;

B.      That process be served;

C.      A declaratory judgment that Defendants violated Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e et seq.

D.      A declaratory judgment that Defendant Envision violated the Equal Pay Act of 1963, 29 U.S.C. §206 (d);

E.      A permanent injunction prohibiting Defendants from engaging in unlawful employment practices in violation of Title VII and the Equal Pay Act;

F.      That the Court award Plaintiff her full back pay and benefits, in an amount to be determined at the trial of this case;

G.      Prejudgment interest and post-judgment interest;

H.      Reinstatement to Plaintiff's former position with Defendants at the same pay grade, or in the alternative, front pay to compensate Plaintiff for lost future wages, benefits, and

pension;

I.      Compensatory damages in an amount to be determined by the enlightened

conscience of the jury, for Plaintiff's emotional distress, suffering, inconvenience, mental

anguish, loss of enjoyment of life, and special damages;

J.      Punitive damages;

K.      Attorneys' fees and costs;

L.      That the Court grant Plaintiff the right to have a trial by jury on all issues triable to a

jury; and

M.      All other and further relief as this Court deems just and proper.


        Respectfully submitted this 10th day of March, 2021.

                                        **BUCKLEY BEAL, LLP**

                                        */s/ Rachel Berlin Benjamin*
                                        Rachel Berlin Benjamin
                                        Georgia Bar No. 707419
                                        rberlin@buckleybeal.com
                                        Ashley Wilson Clark
                                        Georgia Bar No. 771512
                                        awilsonclark@buckleybeal.com
                                        Alessandra T. Palazzolo
                                        Georgia Bar No. 485399
                                        apalazzolo@buckleybeal.com
                                        600 Peachtree Street NE
                                        Suite 3900
                                        Atlanta, GA 30308
                                        Telephone: (404) 781-1100
                                        Facsimile: (404) 781-1101

                                        *Counsel for Plaintiff*